# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BERNIE LUJAN,

        Plaintiff,

v.                              CIV 98-647 MV/KBM

ROBIN OTTEN, et al.,

        Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

This matter came before the Court on Defendants' Motion to Enforce Settlement Agreement. *(Doc. 26)* The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities, and has heard argument of counsel and testimony of witnesses at a hearing November 15, 1999. The Court finds that the motion is well taken and recommends that it be granted.

### A. Issues

The parties engaged in a settlement conference March 4, 1999, with United States Magistrate Judge William Deaton acting as the facilitator. The purpose of the settlement conference was to try to resolve Plaintiff's (Lujan's) claims that arose after Defendants terminated Lujan from his position as an investigator with the New Mexico Real Estate Commission (NMREC). *Transcript of November 15, 1999 Hearing at 58-59 [hereinafter "Hearing Tr."].* The question before the Court is whether the parties reached an enforceable agreement that day,

or whether, as Lujan argues, no enforceable agreement arose due to a failure of the parties to reach a meeting of the minds on a material term. The specific term at issue concerned how the parties would bridge a gap of time in service Lujan needed to receive his retirement under the New Mexico Public Employees Retirement Association (PERA).

### B. Factual and Procedural Background

Lujan was fired June 6, 1995 from his position as chief investigator with NMREC, which apparently fell under the New Mexico Regulation and Licensing Department. *Hearing Tr. at 4*. A detailed account of the reasons for Lujan's firing is unnecessary for this present motion. Suffice it to say that Defendants terminated him following allegations of a history of sexual harassment and other forms of misconduct.

Lujan protested his termination first to the State Personnel Office in an administrative hearing. The hearing officer ruled in Lujan's favor and recommended his reinstatement because Defendants had not subjected Lujan to progressive discipline as the State Personnel Board Rules required. The State Personnel Board upheld the hearing officer's decision, as did the state district court and the New Mexico Court of Appeals. *See New Mexico Regulation & Licensing Dep't. v. Lujan*, 127 N.M. 233, 235 (1999). The Court of Appeals filed its opinion March 17, 1999, almost two weeks *after* the settlement conference took place. *Id*. at 233.

These state court proceedings ran parallel to the present federal action, which Lujan filed June 1, 1998, requesting injunctive relief and damages for alleged violations of 42 U.S.C. § 1983 and the First Amendment. Attorney Donna Dagnall, an experienced employment law attorney, represented Lujan in the federal action and at the settlement conference. *Hearing Tr. at 33*. Attorney Kenneth Wagner represented him in the parallel state litigation.

Defendants contend that at the March 4, 1999 settlement conference, the parties reached a "global" agreement resolving both the state and federal cases. *Hearing Tr. at 8, lines 13-21*. Lujan disagrees, giving rise to two points of dispute. First, Lujan argues that there was no "meeting of the minds" because the parties did not agree on the term that he would have to work for the U.S. Postal Service for eighteen months to qualify for his PERA benefits. Second, Lujan asserts that he never intended to dismiss the state case, and he is therefore now entitled to full reinstatement following the New Mexico Court of Appeals's decision. *Hearing Tr. at 92*. For brevity, I will include other facts below as they become relevant to the discussion.

### C. Discussion

As an initial matter, Judge Deaton's characterization of the agreement as "prospective" does not lead to the conclusion that the parties had not indeed reached an agreement. *Settlement Tr. 2, line 10.* On the contrary, Judge Deaton clarified what he meant by the word, saying, "I will call it prospective in that it is the subject of application that we want to memorialize it and to have it where everybody knows what their role is and what is going on." *Id., lines 10-13*. The simple, unstrained meaning of those words supposes that the parties had reached an agreement, the written memorialization of which was prospective, where the roles and details would be nailed down later.

*1. Materiality of the Term Requiring That Lujan Be Employed for the Period Necessary to Qualify for PERA Retirement*

A material term is an essential term of the contract. *Cf. Stites v. Yelverton*, 60 N.M. 190, 193, 289 P.2d 628, 630 (1955). It is "of the essence of the agreement, the *sine qua non*, or . . . the efficient cause of the agreement, and must be such that it animates and controls the conduct of

3

the parties." 17A Am. Jur.2d *Contracts* § 213 (1991). There is no real dispute that enabling Lujan to qualify for PERA retirement constituted a major objective of the settlement and was an "efficient cause" for the agreement. Rather, Lujan contends that the parties failed to sufficiently agree on *how* this objective would be satisfied and, thus, constitutes a material term on which the parties never agreed.

Twenty-five years of qualifying service were required for Lujan to obtain his state retirement. *Transcript of March 4, 1999 Settlement Conference at 3, lines 13-19 [hereinafter "Settlement Tr."]* (corrected version filed August 12, 1999). Lujan was clearly aware that there was some gap in service that would need to be met somehow. Defendants agreed to purchase a certain amount of Lujan's military time to partially fill the gap. *Settlement Tr. at 3*. Defendants agreed to find Lujan a position in Albuquerque with comparable pay including a retirement benefit to further fill any gap. *Id.* At the end of the discussion on the record, Judge Deaton discussed the parties' understanding of the possibility that some administrative leave might be used to fill the gap. Apparently, Lujan could be reinstated and receive time in service although he never actually appeared for work. Because of time limitations and approvals required for administrative leave, using such leave to bridge the gap was *contingent* on how much time had to be bridged. *Settlement Tr. at 6*.

At the close of the settlement conference, Judge Deaton set out the basic plan for getting Lujan his retirement:

> It is contemplated that the sum of years of service that the plaintiff has, approximately 16 years plus the time that he's been off since he's been terminated, plus the military service, would be approximately 25 years, ***it might be somewhat short of that. As soon as the plaintiff is eligible to retire, which as I understand it***

4

> *his age would require that he have 25 years service, it is agreed he would retire.*

*Settlement Tr. at 3* (emphasis added). Neither Lujan nor his attorney voiced any objection to this statement. Rather, Ms. Dagnall affirmed that this agreement would be acceptable to Lujan if the state could get authority to consummate the deal according to these terms. *Settlement Tr. at 4, lines 7-16*.

The record further confirms the possibility that under the terms of settlement, Lujan may be required to work in Albuquerque to bridge the gap, although the parties contemplated "something less than a year, that the plaintiff would actually have any duties." *Settlement Tr. at 5, lines 22-23*. Significantly, the parties contemplated the possibility of the gap being as much as a year, which was probably too long for the State to bridge with administrative leave. All the foregoing discussion occurred without any correction or objection by Lujan. *Settlement Tr. at 6*.

When Plaintiff was presented with the written settlement agreement, he declined to sign it because it called for him to continue his employment with the U.S. Postal Service for a period sufficient to meet his twenty-five years of qualifying service - roughly eighteen months. Nevertheless, Lujan's attorney, Donna Dagnall, testified at the November 15, 1999 hearing that she believed the proposed written settlement agreement represented the "essence" of the agreement her client had reached with Defendants. She further testified that the written document "complied with what we told Judge Deaton we were going to do at the settlement conference" and recommended to her client that he sign the agreement. *Hearing Tr. at 42, lines 18-23*. Ms. Dagnall believed that "the [intervening] decision of the Court of Appeals definitely impacted my client's willingness to settle the federal case." *Hearing Tr. at 51, lines 6-8*. When he refused to

sign off, Ms. Dagnall withdrew as Lujan's attorney. *Hearing Tr. at 41, lines 11-19.*   In this light, I find that the parties agreed that Lujan may be required to actively work in Albuquerque to enable him to qualify for PERA retirement. Since nearly twelve months of work were acceptable to both parties, I have difficulty discerning a principled reason why one more month or why six more months would not be. Although there may be some point at which the length of employment would be considered material, I find the six extra months to bridge the gap not to be a material term of the settlement.

 It appears that Lujan's continued employment with the Postal Service was perceived by Defendants as the best way to bridge the gap after discovering its length. *Hearing Tr. at 86, lines 9-18.* Yet at the hearing on this motion, Ann Maggiore, an attorney for Defendants, acknowledged that the parties had never discussed Lujan's federal employment at the settlement conference. Indeed, Defendants had agreed to find Lujan an Albuquerque position with comparable wages and benefits to his former position to enable him to receive his PERA retirement. *Settlement Tr. at 2, lines 20-23.*

I therefore conclude, that although the parties reached a binding settlement agreement, a requirement that Lujan continue in his position at the Postal Service was not a necessary part of it. The consequence is that Lujan may continue working for the Postal Service or another qualifying federal agency; the Defendants may find state employment for him in Albuquerque; the Defendants may grant him administrative leave for the time remaining to fill the gap; or the parties may freely agree to any other legitimate means of bridging the gap. However, if state law or PERA regulations require a minimum block of consecutive service to qualify toward retirement, such as one year, Lujan may consider staying with the Post Office to gain credit for his time

already spent there.

### 2. *Lujan Cannot Avoid the Settlement Agreement as He Bore the Risk of Mistake*

Even assuming that the extra six months were material, the law of contracts does not favor Plaintiff. Lujan cites *Stites v. Yelverton*, 60 N.M. 190 (1955), for the proposition that a contract to enter into a future contract is not enforceable unless the parties have agreed on the material terms. There, however, the New Mexico Supreme Court enforced the agreement, determining that the parties had agreed upon the material terms, despite having left some terms open. *Id*. at 200. I regard the present issue, not so much as whether the parties agreed on a material term, but whether they were mistaken about the term, since the parties here knew about the gap and agreed they would bridge it through Lujan working or possibly by administrative leave. They were simply mistaken about, or unaware of, how long the gap was.

State contract law generally governs the enforceability of contracts. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). New Mexico follows the general rule of the *Restatement (Second) of Contracts* (1979) as it concerns the doctrine of mistake of fact. *See Highway & Trans. Dep't. v. Garley*, 111 N.M. 383 (1991). Under *Garley*, where a mistake of both parties at the time a contract was made, as to a basic assumption on which the contract was made, has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake. *Id*. at 386 (citing the *Restatement (Second) of Contracts* § 152). However,

> A party bears the risk of a mistake when
> (a) the risk is allocated to him by agreement of the parties, or
> ***(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient***, or

7

>     (c) the risk is allocated to him by the court on the ground that it is
>     reasonable in the circumstances to do so.

*Id.* at 387 (citing *Restatement (Second) of Contracts* § 154) (emphasis added).

In the present case, Lujan without doubt knew that there was a gap and he also knew that he had limited knowledge of how large the gap was. Nevertheless, Lujan agreed to bridge the gap somehow, either by working or by administrative leave. Thus, even if the additional six months created a material term, Lujan bore the risk of mistake, and cannot avoid the settlement agreement. Moreover, Lujan's position that he was unfairly surprised is not persuasive.

In summary, the six extra months of employment did not constitute a material term about which the parties failed to agree. Morever, Lujan bore the risk of the mistake, even if the term had been material, and cannot therefore avoid the settlement agreement.

### 3. *The Settlement Agreement Encompassed Lujan's State Lawsuit*

Lujan argues that he never intended to settle the state court lawsuit, in which he would be granted full reinstatement, during the settlement conference. Having reviewed the record, and also having considered the logic of this position, I find it untenable, especially given Judge Deaton's articulation of the understanding of the parties' intent:

> The only other thing that we talked about would be with respect to
> whether the plaintiff would be required to report to work. And I
> bring that up because it is an unusual situation in that the only
> reason that we're having the reinstatement is to get to a retirement
> date, and that the circumstances are such between the parties that it
> is not particularly desireable to actually have the plaintiff in a job,
> nor is the plaintiff particularly interested in being in a position.

*Settlement Tr. at 5, lines 11-19.* Proceeding with the state court lawsuit for reinstatement while also expecting Defendants to grant him retirement would have resulted in an irreconcilable

absurdity. Lujan could not be retired and active in the same job at the same time.

Furthermore, I find Lujan's assertion that he did not understand "dismissal with prejudice," as that term concerned his state court case, to be wholly unbelievable. In addition to benefitting from the advice of at least two attorneys following his termination in 1995, Lujan had also been involved in the prosecution of real estate code violations as an investigator for the NMREC. This fairly intimate interaction with the legal system leads to a strong inference that Lujan would understand this most basic of legal terms. Finally, the record of the settlement conference reflects the understanding that all litigation, state and federal, would cease.

> Judge Deaton: When all of these things are accomplished and the plaintiff would be retired, then all the pending state actions, which would be this lawsuit, all the pending actions, which would be this lawsuit and the lawsuit presently pending in -- What, Court of Appeals?
> Ms. Maggiore: Yes.
> Mr. Lombardi: -- New Mexico Court of Appeals would be dismissed with prejudice.

*Settlement Tr. at 3-4*. Once again, neither Lujan nor his attorney voiced any objection. Thus, I find that the settlement agreement encompassed settlement of Lujan's state court case as well.

### D. Conclusion

For the foregoing reasons, I recommend that the settlement agreement be found enforceable, but that Lujan is not required to work for the Postal Service under the agreement to bridge the gap in his service. I also recommend that Defendants' request for attorney fees and costs be denied at this time, as they have cited to no statute, court rule, or contractual provision justifying such an award, nor have they alleged or sustained an assertion that Lujan's position was frivolous. *See Republic Resources Corp. v. ISI Petroleum West Caddo Drilling Program 1981*, 836 F.2d 462, 466 (10th Cir. 1987) (no award of attorney fees to enforce settlement when there

9

was no provision for such an award and opposing parties' arguments were not frivolous).

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

**Counsel for Plaintiff:**

Kenneth R. Wagner
Wagner & Associates
Albuquerque, NM

Donna L. Dagnall
Albuquerque, NM

**Counsel for Defendants:**

W. Ann Maggiore
Walter G. Lombardi
N.M. Legal Bureau/RMD
Santa Fe, NM